UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CARL J. COLTEY, JR., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-cv-30100-MAP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S
MOTION FOR ORDER AFFIRMING DECISION OF COMMISSIONER
(Dkt. Nos. 15 & 17)

August 27, 2014

PONSOR, U.S.D.J.

I.  INTRODUCTION

Plaintiff, Carl J. Coltey Jr., has brought this administrative appeal against Defendant, Commissioner of the Social Security Administration ("SSA").  On May 31, 2011, Magistrate Judge Kenneth Neiman remanded Plaintiff's initial appeal and ordered Defendant to give proper consideration to the opinion of Plaintiff's treating physician.  After a second hearing before the same Administrative Law Judge ("ALJ"), Defendant concluded that Plaintiff was still not

entitled to Supplemental Security Income. The parties have filed cross-motions for judgment on the pleadings. Because the ALJ failed to rely on substantial evidence when continuing to minimize the opinion of Plaintiff's treating physician, the court will allow Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 15) and deny Defendant's Motion for Order Affirming Decision of the Commissioner (Dkt. No. 17). No further remand will be necessary to address the substantive issue of Plaintiff's entitlement to benefits. Remand this second time will focus solely on the proper calculation of the amount of benefits owed to Plaintiff.

## II.   FACTUAL BACKGROUND

On the date of his application, October 11, 2007, Plaintiff was 35 years old. He alleged disability due to chronic obstructive pulmonary disease ("COPD"), emphysema, and knee problems, with an onset date of May 1, 2005. (SSA Admin. R. of Soc. Sec. Proceedings 90-96, Dkt. No. 14 (hereinafter A.R.).) He had a tenth grade education and was previously employed as a dishwasher, painter, and landscaper. (A.R. 438-39.)

A.  Underline Medical Evidence

Since 2005, Plaintiff has received treatment from a number of different care givers to address his ailments. This memorandum proceeds chronologically through that medical history.

In June 2005, Plaintiff suffered an asthma attack and sought emergency treatment at Mercy Medical Center. At that time, he was diagnosed with acute bronchitis, (A.R. 244), and views of his chest showed early signs of COPD. (A.R. 192.) One year later, in November 2006, Plaintiff again received emergency care for shortness of breath, a cough, and knee pain. (A.R. 185.)

In 2007, Plaintiff, in an effort to resolve his knee issues, began seeing Dr. John Corsetti, M.D., at New England Orthopedic Surgeons. On January 23, 2007, Plaintiff reported right knee pain and tenderness. (A.R. 158.) Nonetheless, Plaintiff displayed a full range of motion in all muscle groups and no evidence of instability was present. (A.R. 158.) He showed only mild abnormalities in the patella, and there was no evidence of arthritic change.

(Id.)  The doctor provided Plaintiff a physical therapy program and gave him a cortisone injection.

One month later, Plaintiff sought treatment for his pulmonary issues with Dr. Gerald Green, M.D., at the Caring Health Center.  Plaintiff informed the doctor that he had smoked since he was 12 years old.  (A.R. 261.)  The doctor diagnosed Plaintiff with COPD and asthma and noted ongoing tobacco and alcohol use.

On May 22, 2007, Plaintiff again reported to Dr. Corsetti.  Plaintiff told the doctor that the cortisone injection only provided minimal relief.  The doctor, upon evaluation of Plaintiff, noted asymmetric gait, normal function, full range of motion, full strength in all muscle groups, and no evidence of instability.  (A.R. 159.)  The doctor took an MRI of Plaintiff's knee and found severe chrondormalacia patelle,[1] as well as lateral patellar tilt. (A.R. 280.)

Plaintiff visited Dr. Corsetti again on June 13, 2007. On that date, the doctor reported antalgic gait on the right

_____

[1]  Chrondormalacia is the softening of cartilage. Stedman's Medical Dictionary 332 (26th ed. 1995).

side of Plaintiff's knee.[2] (A.R. 160.)  Plaintiff further

complained of pain and frequent limping.  Dr. Corsetti

diagnosed Plaintiff with end stage osteoarthritis of the

patella.  At that point, the doctor recommended against any

surgery.  (A.R. 160.)

In 2008, Plaintiff continued to experience similar

problems.  On January 25, for example, he told Dr. Corsetti

that his right knee was continuously in pain and that he had

to use a knee brace at all times.  (A.R. 204.)  The doctor

found advanced arthritic changes of the right knee, marked

patellofemoral irritability, and severe chrondormalacia with

lateral tracking.  (Id.)  To address this, the doctor

recommended knee realignment surgery.

On February 12, 2008, Plaintiff's breathing issues

required attention.  He saw Dr. Green, who noted that

Plaintiff's COPD and asthma were stable.  (A.R. 258.)

Plaintiff did, however, need a follow up for pneumonia in

his right lung.  (Id.)  Later in the month, Plaintiff

---

[2]  Antalgic is a synonym for analgesic, which describes
decreased pain perception. Id. at 69.

received care for parenchymal lung disease at Baystate
Medical Center.  (A.R. 183.)  On April 3, 2008, Dr. Green
again noted that the COPD and asthma were stable.  (A.R.
257.)

	After suffering from a fall, Plaintiff visited the
emergency room again in May 2008.  There, he showed left
knee swelling and was diagnosed with a tear in the meniscus.
(A.R. 229 & 234.)  At the end of the month, Plaintiff told
Dr. Corsetti that he had continuous left knee pain and
presented with decreased range of motion in that knee.
(A.R. 266.)  An MRI showed patellar dislocation, no meniscal
tear, a partial tear of the patellofemoral ligament, and a
low-grade MCL sprain.  (A.R. 278.)  Plaintiff saw a provider
in Dr. Corsetti's office on June 9, 2008, and the provider
diagnosed Plaintiff with a recent patellofemoral dislocation
of the left knee.  The provider again advised against
aggressive surgical intervention.  (A.R. 265.)

	Plaintiff had his final visit with Dr. Green on June
19, 2008.  The doctor noted that Plaintiff's lungs were
clear, he was free from wheezing, and he showed no signs of
pulmonary hypertension.  (A.R. 286.)

In 2009, Plaintiff continued to experience significant knee pain. To address that pain, Dr. Corsetti, on February 3, performed a right knee patellofemoral chronosis procedure. (A.R. 380.) Nonetheless, Plaintiff still complained of constant aches. (A.R. 283.) In March, Dr. Corsetti examined Plaintiff's progress and observed full motion with kneecap irritability and crepitus.[3] (A.R. 374.) Plaintiff, however, rated his pain as a ten out of ten.

Plaintiff also saw Dr. Andrew Lehman, M.D., to address his knee issues. The doctor took an x-ray of Plaintiff's knee that day and found no abnormalities. The objective evidence, in the doctor's view, did not match Plaintiff's subjective complaints. (A.R. 372-73.) The doctor suggested Plaintiff continue with physical therapy and that he receive cortisone shots.

On May 21, 2009, Dr. Corsetti completed a Residual Functional Capacity ("RFC") form on Plaintiff's behalf. By that point he possessed close familiarity with Plaintiff's medical condition, having been treating him for a year and a

---

[3] Crepitus indicates grating of the joint. Stedman's Medical Dictionary at 409.

half in connection with his bilateral knee arthritis. (A.R. 398.) He stated that Plaintiff could sit for 45 minutes before needing to get up; could stand for 10 minutes before needing to sit down; could stand and/or walk for less than two hours in an eight-hour work day; could rarely lift ten pounds; and could never lift more than ten pounds. (A.R. 399-400.) Moreover, Dr. Corsetti found that Plaintiff would need six to eight unscheduled breaks per day, would miss more than four days of work per month, and would need to elevate his leg for 20% of an eight-hour day. (Id.) He described Plaintiff's prognosis as "poor," stated that he relied on objective signs including x-rays and an arthrogram, (A.R. 398), and concluded that the impairments would last at least twelve months. (Id.)

As 2009 came to a close, Plaintiff again presented to Dr. Lehman a number of times, continuing to complain of extensive pain. (A.R. 635.) In November 2009, Dr. Lehman diagnosed Plaintiff with mild arthritic changes in the knee. (A.R. 632-33.) He also found that Plaintiff had a negative straight leg raise test, a full range of motion in both

knees, and an x-ray that revealed no abnormalities.[4]

B.  Disability Evaluations

On December 3, 2007, Dr. Hollis Coblentz reviewed
Plaintiff's records and completed a Physical RFC form on his
behalf.  (A.R. 195-202.)  The doctor determined that
Plaintiff could occasionally lift and/or carry 20 pounds;
could frequently lift and/or carry 10 pounds; could stand
and/or walk for a total of six hours in an eight-hour day;
and could sit for a total of about six hours.  (A.R. 196.)
Plaintiff, in the doctor's view, could occasionally climb
ladders, ropes, scaffolds, ramps, and stairs, and also could
occasionally stoop, kneel, crouch, and crawl.  (A.R. 197.)
Finally, the doctor said that Plaintiff should avoid
concentrated exposure to fumes, odors, dusts, and poor
ventilation.  (A.R. 199.)

C.  The ALJ's Initial Determination and Reversal

---

[4]  Plaintiff also visited Dr. Armen Asik three times
for hereditary factor XII deficiency, which is an
impairment that results in a lengthening of the amount
of time necessary for venous blood to clot.  Stedman's
Medical Dictionary at 626.  Dr. Asik noted that
Plaintiff was not at risk for excessive bleeding. (A.R.
348-52.)

Plaintiff's initial hearing before an Administrative
Law Judge ("ALJ") occurred on October 7, 2009.  A non-
attorney representative of the Law Offices of Thomas M.
Libbos, F. Bruce Ferin, represented Plaintiff.  (A.R. 59-
60.)

The ALJ, on November 4, 2009, followed the five-step
sequential disability determination, pursuant to 20 C.F.R. §
416.920.  The ALJ concluded that Plaintiff had not engaged
in substantial gainful activity since the onset of his
disability, May 1, 2005, (A.R. 9), and had severe
impairments of bilateral knee disorders, COPD/asthma, and
hereditary Factor XII deficiency.  (Id.)  Nonetheless, the
ALJ determined that although Plaintiff was unable to perform
past relevant work, he had the ability to perform work that
existed in significant numbers in the national economy.  He
was therefore not disabled.

In reaching that conclusion, the ALJ discounted the
opinion of Dr. Corsetti.  In the ALJ's view, Dr. Corsetti's
opinion was "conclusory and inconsistent with other
significant evidence of record."  (A.R. 12.)  Moreover, Dr.
Corsetti only relied on imaging studies and a right knee

-10-

arthroscopy, and thus the clinical evidence was insufficient to justify Dr. Corsetti's conclusions.  (Id.)  Finally, the ALJ relied on some of the findings in Dr. Corsetti's own examinations of Plaintiff, which the ALJ found to be inconsistent with the limitations Dr. Corsetti described. (Id.)

Plaintiff appealed that decision to the Commissioner's Decision Review Board ("DRB").  On March 11, 2010, the DRB indicated that it had failed to complete its review within ninety days, and therefore the ALJ's decision was final. (A.R. 1.)  Plaintiff subsequently appealed the case to this court.

On May 31, 2011, Magistrate Judge Kenneth P. Neiman remanded Plaintiff's case for further proceedings.   (A.R. 464-73.)  The Magistrate Judge concluded that the ALJ had engaged in an inadequate analysis with respect to Dr. Corsetti's opinion and that "insubstantial evidence support[ed] the ALJ's conclusion that Dr. Corsetti's description of Plaintiff's reduced functional capacity was necessarily inconsistent with prior medical reports concerning Plaintiff's condition."  (A.R. 472.)

D.    <u>The ALJ's Second Hearing</u>

Plaintiff's second hearing occurred before the same ALJ, on January 10, 2012.  At that hearing, Plaintiff was represented by his current counsel, Tricia Jacobs.

Plaintiff testified as to each of his impairments. With respect to his knees, he stated that his pain was worse in his right knee than his left, that he wore a brace on his right knee, used a cane, and received physical therapy as well as cortisone injections.  (A.R. 441-42.)  He characterized the pain as constant, though walking, sitting, and prolonged standing exacerbated it.  (A.R. 452.)  To alleviate the pain, he stated that he kept his leg elevated five or six times a day for at least half an hour.  Without medication, he characterized his pain as a ten out of ten and, with medication, a seven out of ten.  (A.R. 444.)

Plaintiff also discussed his breathing problems. Plaintiff had been diagnosed with COPD and used medication and an inhaler to assist with that problem.  (A.R. 443.)  As a result of that impairment, he had difficulty breathing, pain in his chest, and would sometimes stop breathing in the middle of the night.  (A.R. 444 & 453.)  Physical activity

and extreme temperatures exacerbated these problems.  (A.R. 450.)

Additionally, Plaintiff testified that he could only sit comfortably for 20 minutes, could stand in one place for 15 minutes, and could walk one half of a block.  (A.R. 446-47.)  He could lift a gallon of milk, did not belong to any social clubs or groups, and spent the majority of his day watching television or listening to the radio.  (A.R. 447-48.)  He acknowledged that he did manage to cook for himself, do his own laundry, and groom and dress himself. (A.R. 447.)  He testified that, because of the pain, he remained in bed approximately three days each week.  (A.R. 454.)

At the hearing, Mr. Larry Takki, a vocational expert, also testified.  The ALJ asked the expert what work a hypothetical individual could complete, assuming Plaintiff's age, education, and work experience, if he were limited to light work and only simple and unskilled tasks.  (A.R. 458.) In this first hypothetical, the ALJ included a number of additional limitations, including avoiding "more than incidental exposure to extremes of cold, vibration, heat,

fumes, dust, gases, or other respiratory irritants." (A.R. 458.) To that question, the expert testified that the hypothetical individual could not perform Plaintiff's prior work, but could work as a communication equipment assembler, a ticket seller, and a collator operator. (A.R. 458-59.) The ALJ then adjusted the hypothetical and reduced the exertion level from light work to sedentary work. (A.R. 459.) The expert again noted that the same jobs would be available. (Id.) Next, the ALJ asked whether work was available for an individual who needed to be off task for one-third of the workday. (Id.) To that question, the expert concluded that no jobs would be available. (Id.)

Plaintiff's counsel then asked the expert several questions. First, she asked whether work were available for someone who needed to take six to eight unscheduled breaks to elevate their legs. (A.R. 460.) The expert testified that the collator operator position would be eliminated, but the individual could continue to work as a communication equipment assembler and a ticket seller. (A.R. 461.) Attorney Jacobs then asked whether the hypothetical individual would be employable if he would need to miss more

than four days of work per month.  The expert concluded that such an individual would not be employable.  (Id.)

E.   The ALJ's Decision

In reaching a second decision, the ALJ again followed the five-step sequential disability determination.  At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his application date, October 11, 2007.  (A.R. 418.)  At step two, the ALJ classified Plaintiff's bilateral knee disorders and COPD/asthma as "severe" impairments.  (Id.)  Nonetheless, at step three, the ALJ noted that Plaintiff's impairments did not meet or medically equal an entry on the "Listing of Impairments."

In making this evaluation, the ALJ still found Dr. Corsetti's opinion to be unpersuasive, because it was "conclusory and inconsistent with other significant evidence of record."  (A.R. 421.)  Again, the ALJ noted the supposed absence of clinical signs to substantiate Dr. Corsetti's opinions and found the examinations by other physicians to be inconsistent with the substantial limitations described by Dr. Corsetti.  (Id.)  In this second memorandum, the ALJ

more emphatically emphasized the opinion of Dr. Lehman, who treated Plaintiff after Dr. Corsetti and who, the ALJ found, appeared to disagree with Dr. Corsetti's opinion as to the severity of Plaintiff's impairment. To the ALJ, this suggested that Dr. Corsetti's analysis was not entitled to substantial weight. (Id.) In sum, the ALJ said, the RFC assessment was "supported by the medical record which shows that the claimant has bilateral knee pain with a history of right knee arthroscopy and asthma." (A.R. 422.) However, "no medical evidence . . . support[s] a finding that the claimant is likely to miss work for several days each month as suggested by Dr. Corsetti." (Id.)

Proceeding to step four, the ALJ found that Plaintiff had an RFC to perform "light work,"[5] but could only stand and walk for two hours in an eight-hour day, occasionally climb ramps and stairs, balance, kneel, crouch, crawl or stoop, and could not operate foot or leg controls, climb

---

[5] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) & 416.967(b). It may also require a good deal of walking, standing, or sitting with some light pushing or pulling of arm or leg controls.

ladders, ropes or scaffolding, work around dangerous machinery or be exposed to extreme temperatures, vibrations, or respiratory irritants. (A.R. 419.) The ALJ also limited Plaintiff to simple, unskilled tasks that allowed him to change positions between sitting and standing. (Id.) The ALJ concluded that Plaintiff could not perform his past relevant work but, at step five, concluded that Plaintiff was capable of performing work as an assembler, collator operator, and ticket seller. Thus, the ALJ concluded that Plaintiff was not disabled as defined under the law.

### III. DISCUSSION

A district court reviewing an ALJ's decision must determine whether the conclusion was "supported by substantial evidence and based on the correct legal standard." 42 U.S.C. § 405(g); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st. Cir. 1996). Because the responsibility for weighing conflicting evidence belongs to the Commissioner, Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001), her findings "as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). Substantial evidence means "a reasonable mind,

reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

A.   The Merits

Plaintiff's central contention is that the ALJ again failed adequately to consider the opinion of Plaintiff's treating orthopedic surgeon, Dr. John Corsetti.[6]  This doctor explicitly noted that Plaintiff's impairments would produce "good" and "bad" days, requiring Plaintiff to miss work more than four days per month.  (A.R. 401.)  Dr. Corsetti grounded this conclusion on his consistent treatment of Plaintiff and on objective evidence such as an x-ray and an arthrogram.  Nonetheless, the ALJ found this conclusion unsupported by the evidence.  (A.R. 422.)

---

[6]  Plaintiff also contends that an inconsistency between a hypothetical posed to the vocational expert and posited in the final RFC -- with respect to a sit-stand option and respiratory irritants -- warrants reversal.  However, as Defendant notes, no actual inconsistency existed with respect to the sit-stand option, (A.R. 459), and any difference with respect to the respiratory irritants was harmless since the jobs Plaintiff was deemed capable of performing required no such exposure.

A treating physician's opinion, such as Dr. Corsetti's, is generally entitled to controlling weight, so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 416.927 (c)(2). An ALJ may depart from this requirement and downplay the opinion, only if it is inconsistent with other substantial evidence in the record. <u>Gregory v. Astrue</u>, No. 11-cv-30281-KPN, 2012 WL 5899235 at *4-5 (D. Mass. Oct. 25, 2012).

The ALJ discounted Dr. Corsetti's opinion a second time for two reasons: inconsistency with other, significant evidence in the record and a failure to rely on objective, clinical evidence.

As noted above, Judge Neiman order a remand of this case to permit the ALJ to consider more carefully and to spell out in more detail his reasons for disregarding the treating physician's opinion. In response, the ALJ merely copied, <u>verbatim</u>, the prior inadequate analysis. (<u>Compare</u> A.R. 12 <u>with</u> A.R. 421.) For instance, in both opinions, the ALJ emphasized certain findings in the medical record, which

showed "full knee range of motion, normal lower extremity strength, sensation and reflexes, and no instability." (A.R. 12 & 421.) However, as Judge Neiman pointed out, this evidence "hardy amounts to objective findings sufficient enough to enable the ALJ to completely discount Dr. Corsetti's later findings." (A.R. 471.) The ALJ simply failed to comply with Judge Neiman's order when replicating these arguments. Accordingly, the justifications the ALJ offered still do not provide sufficient support for minimizing Dr. Corsetti's opinion.

The only meaningful difference between the ALJ's two opinions is the emphasis he places on Dr. Lehman's treatment notes from November 2009 in the most recent decision. In that report, Dr. Lehman indicated that x-rays showed no evidence of abnormalities or evidence of arthritis, that a knee replacement surgery was inappropriate at that time, and that Plaintiff needed to "strengthen his quads, continue with an independent exercise program, [and] take periodic anti-inflammatories and periodic Cortisone shots if helpful." (A.R. 633.) Since these represented the most recent objective reports, the ALJ provided them significant

weight and, consequently, discounted Dr. Corsetti's analysis of Plaintiff's limitations.

The problem with the ALJ's analysis is that he found an inconsistency where none actually existed. Though Dr. Lehman's November notes and evaluation imply that surgery was not the appropriate remedy for Plaintiff's knee problems, they do not undermine Dr. Corsetti's opinion respecting Plaintiff's pain and very substantial limitations.

First, Dr. Lehman's notes detailing Plaintiff's pain were consistent with Dr. Corsetti's. Dr. Lehman noted, "He continues to have global discomfort in his knees and is doing quite poorly in regards to his knee. 10/10/ [sic] pain, which he localizes over the anterior aspect of his knee. It is severe at rest. He is having activity limitations. Unable to walk more than two blocks." (A.R. 632.) Although Dr. Lehman also stated that Plaintiff's pain was more than would be expected, he did not raise any doubt as to the veracity of Plaintiff's statements. Dr. Lehman's records do not disturb Dr. Corsetti's conclusion that Plaintiff's pain was significant and caused him substantial

limitations.

Second, after recognizing this pain, Dr. Lehman's notes are silent on the extent to which it would limit Plaintiff's activities, including his ability to work.  20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.")  Nothing in Dr. Lehman's medical report contradicts Dr. Corsetti's conclusion that Plaintiff would be forced to miss work more than four days per month on account of the pain.  Although Dr. Lehman's silence on Plaintiff's limitations perhaps did not <u>add</u> support to Dr. Corsetti's ultimate conclusions, it was manifestly incorrect to conclude that the absence of any discussion of Plaintiff's limitations by Dr. Lehman somehow undermined Dr. Corsetti's findings in this area.  Nothing in Dr. Lehman's report mandated any conclusion opposed to Dr. Corsetti's -- <u>i.e.</u> that Plaintiff <u>would</u> <u>not</u> miss more than

four days per month and was not limited in the ways Dr. Corsetti described.

Simply stated, Dr. Lehman's analysis -- given his recognition of Plaintiff's pain and a corresponding dearth of discussion respecting Plaintiff's limitations -- does not represent substantial evidence warranting a minimization of Dr. Corsetti's analysis.  Instead, Dr. Corsetti's opinions remain the only substantial evidence on the question of Plaintiff's limitations in the record.  Accordingly, the ALJ, as before, inappropriately minimized the opinion of Plaintiff's treating doctor and reversal is required.

B.    <u>The Remedy</u>

Ordinarily, the appropriate remedy for an ALJ's incorrect assessment of a treating physician's opinion is a remand for further analysis.  However, "the court can order the agency to provide the relief it denied . . . in the unusual case in which the underlying facts and law are such that the agency has no discretion to act."  <u>Seavey v. Barnhart</u>, 276 F.3d 1, 11 (1st Cir. 2001).  For instance, a court can order that benefits be paid if "proof of disability is overwhelming or where the proof is very strong

-23-

and there is no contrary evidence." Id.  Indeed, "a remand

for further proceedings is unnecessary if the record is

fully developed and it is clear from the record that the ALJ

would be required to award benefits." Id., quoting Holohan

v. Massangari, 246 F.3d 1195, 1210 (9th Cir. 2001).

This is the unusual case where an order requiring

Defendant to provide benefits, rather than a remand for

further consideration on the question of disability, is

appropriate.  The court has now determined twice that the

ALJ failed to adequately consider Plaintiff's treating

physician's opinion and that the ALJ was incorrect to

discount the limitations described.  Since those limitations

included pain so extensive as to force Plaintiff to miss

work for more than four days per month, (A.R. 399-400), and

the vocational expert testified that no jobs were available

for an individual with such a limitation, (A.R. 461), no

analysis of this record yields any conclusion other than

that Plaintiff was disabled as defined under the statute.

Moreover, no evidentiary issues remain outstanding requiring

further exploration.  Since the evidentiary record is

complete and Plaintiff is plainly entitled to benefits,

remand would simply "delay much needed income for [a claimant] who [is] unable to work and [is] entitled to benefits." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

In addition to the clarity of the record evidence, it is important to note once more that this case has already been remanded once, with considerable delay.  The inadequate analysis during this second round thwarted the purpose of the remand.  One remand is enough.  Plaintiff is entitled to a fair calculation of his benefit entitlement without further delay.

Accordingly, the court will reverse the ALJ's decision as to Plaintiff's substantive eligibility for disability benefits and remand the case solely to permit Defendant to calculate the amount of benefits owed.

### IV.  CONCLUSION

For the foregoing reasons, the court hereby ALLOWS Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 15) and DENIES Defendant's Motion for Order Affirming Decision of the Commissioner (Dkt. No. 17).  The decision of Defendant respecting Plaintiff's eligibility for benefits is

-25-

reversed, and the case is remanded for Defendant to calculate the amount owed.

The Commissioner is further ordered to report to the court, through counsel, no later than October 31, 2014, as to the status of the proceedings on remand, and every sixty days thereafter, until benefits are calculated and payment is made.

The clerk will enter judgment for Plaintiff. The case may now be closed.

It is So Ordered.

                                    /s/ Michael A. Ponsor
                                    MICHAEL A. PONSOR
                                    U. S. District Judge